**USX CORPORATION, et al., Plaintiffs,**

v.

**TIECO, INC., et al., Defendants.**

**Civil Action No. 95–C–3237–S.**

United States District Court,
N.D. Alabama,
Southern Division.

June 21, 1996.

enth Circuit opinion, however, would appear to    remain.

Victor L. Hayslip, Peter A. Grammas, C. Gregory Burgess, Burr & Forman, Birmingham, AL, J.L. Chestnut, Jr., Chestnut Sanders Sanders & Pettaway, Selma, AL, for USX Corporation, and Heatherwood Golf Club, Inc.

Albert C. Bowen, Jr., Clyde E. Riley, Beddow Erben & Bowen, Birmingham, AL, George W. Andrews, III, J. Mark White, Linda G. Flippo, White Dunn & Booker, Birmingham, AL, for TIECO, Inc., ATOZ Management, Inc., and Fletcher Yielding.

Albert C. Bowen, Jr., Clyde E. Riley, Beddow Erben & Bowen, Birmingham, AL, for James B. Roberts, James Michael Walton, Eldred Burder Teague, Pamela Hackbarth, and Thomas Robinson.

Albert C. Bowen, Jr., Clyde E. Riley, Beddow Erben & Bowen, Birmingham, AL, John W. Sudderth, Sudderth & Somerset, Birmingham AL, for Edward Pyle.

Terry Price, R. David Proctor, Lehr Middlebrooks Price & Proctor PC, Birmingham, AL, for Jeff Sessions, Edward F. McFadden, and John F. Mulligan.

## MEMORANDUM OF OPINION GRANTING MOTION TO DISQUALIFY COUNSEL

CLEMON, District Judge.

In this action alleging fraud, breach of contract, commercial bribery, conspiracy, and a violation of the Racketeer Influenced Organization Act, 18 U.S.C. § 1962 ("RICO"), defendants TIECO, Inc., ATOZ Management ("ATOZ"), and Fletcher Yielding have moved the Court to disqualify one of the law firms representing plaintiffs USX Corporation and Heatherwood Golf Club, Inc. The motion is based on Rules 1.7, 1.9, 3.10, and 3.7 of the Alabama Rules of Professional Conduct. For the reasons which follow, the Court concludes that the motion is due to be granted as to one of plaintiffs' counsel and otherwise overruled.

### I.

According to the complaint, the defendants devised and implemented a scheme to defraud the plaintiffs by submitting false invoices for goods and supplies bought and paid for by the plaintiffs but never delivered to them. The defendants allegedly gave kickbacks to certain employees of plaintiffs who participated in the fraudulent scheme.

Defendants deny plaintiffs' claims and assert as affirmative defenses, *inter alia*, unclean hands, estoppel, waiver, and use of the criminal process to enforce an alleged debt in violation of Alabama law. Defendants have also filed a counterclaim against the plaintiffs, the Attorney General of the State of Alabama, and two others in the Office of the Attorney General ("AG"). In their counterclaim, the defendants allege civil rights violations and conspiracy under 42 U.S.C. §§ 1983 and 1985, violations of § 36–25–8 of the Code of Alabama of 1975 (regarding non-disclosure of confidential information by a public offi-

cial), intentional interference with business relationships, negligence, wantonness, conversion, and conspiracy.

## II.

In December 1994, Martin A. Colby, a TIECO salesman who principally worked its account with plaintiff USX, was terminated. Following his discharge, Colby accepted a position with Turf Care Products, Inc., a competitor of TIECO. TIECO then filed a lawsuit against Colby in state court, alleging a violation of the non-compete clause of his employment contract with TIECO. Colby was represented by Victor L. Hayslip and Jennifer M. Busby of the law firm of Burr & Forman ("B & F"), located principally in Birmingham, Alabama. The case was settled in March 1995. Neither Mr. Hayslip nor anyone in B & F has represented Mr. Colby since that time.

In April 1995, an associate in the B & F firm contacted Deputy AG Kristi Lee and advised that an ex-employee of TIECO had information that TIECO may have violated the Alabama competitive Bid Law and defrauded its customers and manufacturers of products sold by TIECO. On May 8, 1995, Mr. Hayslip wrote a "confidential" seven-page letter to Ms. Lee. This letter outlined in substantial detail the alleged criminal conduct of TIECO. Although Mr. Hayslip did not identify his client in the letter, he stated that his client had

"... asked that the [sic] [he] bring this information to [Ms. Lee's] attention in the hope that the Attorney General's office will conduct any necessary investigation and, if appropriate, enforce the competitive bid law so that all companies may compete for public contracts on an equal basis. Absent strict enforcement of the competitive bid statute and other applicable laws, it is impossible for law-abiding companies—such as my client—to compete for public contracts or for the public to benefit by

receiving the lowest possible price for goods and services."

Letter, p. 1. Early on in the May 8 letter, Mr. Hayslip indicated:

"Both my client and Tieco's ex-employee stand ready and willing to provide whatever assistance your office requires in investigating these allegations. However, prior to the ex-employee coming forward, he or she must first be given full immunity from criminal prosecution for any and all participation in the activities outlined below."

*Id.,* p. 2 ¶ 2. The concluding paragraphs of the letter were equally clear

"I must stress that the ex-Tieco employee who provided me with much of this information regarding Tieco's alleged activities is willing to cooperate in every way as long as he or she is first given absolute immunity from criminal prosecution for activities of the type described above.

Once you have had an opportunity to review this material, please contact me so that we can discuss immunity and the ex-employee's involvement and assistance with your investigation. Should you have any questions prior to that time, please do not hesitate to call me. I am also available to meet with you in Montgomery if you would like."

*Id.,* p. 7.

On June 13, 1995, Ms. Lee, Chief Investigator Edward F. McFadden of the AG's office, and FBI Special Agent Jack Brennen met with Mr. Hayslip in his office. Also present for that meeting were representatives of plaintiff USX, including its in-house counsel and auditors.[1] A second meeting occurred that same day between Mr. Hayslip, Ms. Lee, an intern in her office, Mr. Colby, and a B & F associate.

On August 30, 1995, Mr. McFadden and Investigator Larry Miller of the AG's office sought and obtained from the District Court

---

1. B & F and its predecessor firms have represented USX and its predecessor companies for nearly a century.

of Jefferson County, Alabama, a search warrant for the seizure of the business records of TIECO and ATOZ. The affidavit for the search warrant was based principally on information provided by Mr. Colby. The search warrant was executed on the following day.

The seizure by the AG's office included virtually all of the business records of these two defendants, as well as some of the records of another corporation, House of Threads, Inc.

Some of the records seized by the AG's office were later turned over to USX. After USX received these records, it filed this lawsuit in December 1995.

At a hearing on TIECO, ATOZ, and House of Threads' Motion For A Protective Order, the following exchange occurred:

THE COURT: So, you didn't go to the attorney general and make a complaint?

MR. HAYSLIP: No. I have talked to the attorney general. The attorney general has interviewed people at USX. They have interviewed a number of—

THE COURT: No. What I'm asking you is this. Did USX have anything to do with the commencement of this investigation by the attorney general?

MR. HAYSLIP: I think you would have to ask the attorney general that, because I don't know.

THE COURT: No. I'm asking you.

MR. HAYSLIP: We did talk with them. Yes sir, we did talk with them.

Transcript, p. 11, line ("ln") 25; p. 12, lns 1–11.

During the same hearing, Mr. Hayslip gratuitously offered: "If you want to, I can go on the record right here and list you probably fifteen or thirty customers that they are defrauding just like us, including cities, counties, other corporations...." *Id.*, p. 10, lns 19–22.

III.

In March 1996, defendants noticed the depositions of Mr. Hayslip, Mr. Colby, and another former employee of TIECO, Thomas Robinson. Because the court was then unaware of the nature and extent of Mr. Hayslip's role in the criminal investigation, it granted his motion to stay his deposition while permitting the depositions of the other two deponents to proceed as noticed. In granting Mr. Hayslip's motion, the Court assumed that the only matters on which he would testify were protected by the attorney-client privilege.

At his deposition, Mr. Colby consistently invoked his fifth amendment privilege when questioned by defendants' lawyer concerning his involvement with USX, B & F, and the investigation by the Attorney General's office.[2]

IV.

Rule 3.7 of the Alabama Rules of Professional Conduct provides:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness, except where

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness, unless precluded from doing so by Rule 1.7 or Rule 1.9.

The Court is convinced that on one or more of the affirmative defenses, as well as on several of the counterclaims, Mr. Hayslip

---

2. The Court was informed by Mr. Colby's new lawyer two days ago that inasmuch as Mr. Colby has now been granted immunity from prosecution, he will not invoke his fifth amendment privilege when the deposition is rescheduled.

is likely to be a necessary adverse witness for the defendants. For example, on the affirmative defense of estoppel or the affirmative defense/counterclaim of improper use of the criminal process to collect a civil debt, Mr. Hayslip's testimony may be necessary. And certainly on the counterclaim of a conspiracy to violate defendants' civil rights, the testimony of Mr. Hayslip likely will be necessary. The centrality of Mr. Hayslip's testimony to the defendants' case is borne out by the fact that he was one of the first persons whose deposition was noticed by them.

Mr. Hayslip does not assert, and the Court does not find, that his testimony on these issues would be barred by the attorney-client privilege.

Mr. Hayslip's testimony would not be covered by either of the first two exceptions to Rule 3.7(a).

Although Mr. Hayslip contends that his disqualification would work a hardship on his client, the Court finds to the contrary. First, Mr. Hayslip is not the only B & F lawyer who has worked on this case. In fact, the complaint is signed not by him, but by his co-counsel, Peter A. Grammas. Secondly, the B & F law firm will remain counsel of record for plaintiffs. Finally, Mr. J.L. Chestnut, of the law firm of Chestnut, Sanders, Sanders & Pettaway, P.C., who entered his appearance in the case the day after the complaint was filed, remains as additional counsel for the plaintiffs.

## V.

The defendants contend that the B & F law firm should be disqualified on the alternate grounds that its representation of plaintiffs conflicts with the interests of its former client, Martin Colby, in violation of Rule 1.7 [3] and Rule 1.9 [4] of the Alabama Rules of Professional Conduct.

■ The Court finds that the defendants lack standing to raise this issue.

■ The Comments to Rule 1.7 make it clear that it is primarily *B & F's responsibility* to make the determination of whether its representation of plaintiffs presents a conflict under the Rule. Since this Court has no reason to infer that B & F has neglected its responsibility to any of its clients, it is inappropriate for the Court to raise the question. Moreover, since the alleged conflict does not clearly call into question the fair or efficient administration of justice, defendants may not properly raise the issue.

■ Defendants fare no better under Rule 1.9. "Disqualification from subsequent representation is for the protection of clients and can be waived by them." Comment to Rule 1.9. Here, Mr. Colby has without restriction waived any conflict after consultation with counsel. And the evidence indicates that to the extent that B & F may have used information provided by Mr. Colby during its representation of him, B & F has insisted that he be protected by a grant of absolute immunity.

3. (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

4. A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

**1460**

VI.

Defendants finally maintain that B & F should be disqualified under Rule 3.10, which provides: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." The Advisory Committee Comment properly observes, among other things: "As in all cases of abuse of judicial process, the improper use of the criminal process tends to diminish public confidence in our legal system." West Publishing Company, *Alabama Rules of Court, State.* 630 (1995 ed.).

Obviously, at this stage of these proceedings, the final ground of the defendants' motion to disqualify is premature at best. Defendants have alleged both as an affirmative defense and as a counterclaim that the plaintiffs used the criminal process to collect a civil debt. The burden of proof of these matters rests squarely on the shoulders of the defendants. The case has yet to be tried to a jury. This Court cannot usurp the jury's exclusive role to decide whether the defendants have carried their burden of proof by a preponderance of the evidence.

■ In any event, the defendants have not proved at this point that the plaintiffs' counsel should be disqualified based on a violation of Rule 3.10.

For the reasons stated herein, defendants' Motion to Disqualify has previously been GRANTED as to attorney Victor L. Hayslip, and otherwise OVERRULED.